[No. C057896. Third Dist. Jan. 28, 2009.]

MIRIAM MILLER et al., Plaintiffs and Appellants, v.
BANK OF AMERICA, N.A. (USA), Defendant and Respondent.

**COUNSEL**

The Law Office of Edward P. Dudensing and Christopher S. Buckley for Plaintiffs and Appellants.

Arnold & Porter, Laurence J. Hutt and Teri R. Richardson for Defendant and Respondent.

## OPINION

**DAVIS, J.**—California has a pair of "holiday statutes" that essentially state that whenever a legal or contractual act is required to be performed on a holiday, the act may be performed on the next business day without any adverse consequence. (Civ. Code, §§ 9, 11.) The question in this appeal is whether these state holiday statutes apply to a national bank's credit card payment due dates. They do not. This is because these state laws are preempted by a federal law stating that a national bank may make non-real-estate loans without regard to state law limitations concerning the terms of credit; these terms include the schedule for repayment of principal and interest and the payments due. (12 C.F.R. § 7.4008(d)(2)(iv) (2009); see 12 U.S.C. §§ 21 et seq., 93a (National Bank Act).)

Accordingly, we affirm the judgment rejecting the lawsuit of Miriam Miller et al. because it is preempted.

### BACKGROUND

This case comes before us as a third amended class action complaint, a demurrer to which the trial court sustained without leave to amend.

In reviewing a general demurrer sustained without leave to amend, we must determine whether, assuming the facts alleged in the complaint are true, a cause of action has been or can be stated. (*Ball v. GTE Mobilnet of California* (2000) 81 Cal.App.4th 529, 534–535 [96 Cal.Rptr.2d 801] (*Ball*).)

In the third amended complaint, plaintiffs, on behalf of themselves and all others similarly situated, allege they are credit card customers of defendant Bank of America, N.A. (USA) (BofA-USA), a national bank.[1]

Plaintiffs allege that the California and Arizona "holiday statutes"—specifically, California Civil Code sections 9 and 11 and Arizona Revised Statute section 1-303—prohibit BofA-USA from charging late fees or interest for credit card payments "posted on the first business day after a Holiday due date, when such fee[s] or interest would not have been due if the payment was posted on the Holiday due date"; and that BofA-USA violated this prohibition.[2]

Plaintiffs allege three causes of action, each of which aligns with one of the three holiday statutes. Each cause alleges that the respective holiday statute

---

[1] As a result of a merger, BofA-USA is now known as FIA Card Services, N.A., which is also a national bank.

[2] California Civil Code section 9 provides in pertinent part: "[A]ny act appointed by law or contract . . . to be performed on any day which is an optional bank holiday . . . may be

violation is an "unlawful" act under California's unfair competition law. (Bus. & Prof. Code, § 17200 et seq.; see *id.*, § 17200 ["unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice . . ."].) Plaintiffs seek to stop BofA-USA from further violating the holiday laws, and to have BofA-USA make restitution to each class member.

The trial court sustained BofA-USA's demurrer without leave to amend based on federal preemption of these state holiday statutes.

### DISCUSSION

"A demurrer is an appropriate vehicle to secure a dismissal of a state law action based on federal law preemption." (*Ball, supra*, 81 Cal.App.4th at p. 535.)

### 1. *Principles of Preemption*

■    Under the supremacy clause of the federal Constitution, federal law can preempt state law in one of three ways: (1) *expressly*; (2) by actually *conflicting* with state law; or (3) by exclusively *occupying* a legislative *field.* (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1476 [38 Cal.Rptr.3d 653] (*Smith*); *Hood v. Santa Barbara Bank & Trust* (2006) 143 Cal.App.4th 526, 536 [49 Cal.Rptr.3d 369] (*Hood*).)

■    " ' "Federal regulations may preempt state law just as fully as federal statutes." ' " (*Hood, supra*, 143 Cal.App.4th at p. 536, quoting *Smith, supra*, 135 Cal.App.4th at p. 1475, fn. 6.)

---

performed on the next succeeding business day." An optional bank holiday is defined as including every Saturday and Sunday, and certain enumerated holidays and other days. (Civ. Code, § 7.1.)

California Civil Code section 11 provides as pertinent: "Whenever any act of a secular nature . . . is appointed by law or contract to be performed upon a . . . holiday, it may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed." The term "holiday" in section 11 is defined as including every Sunday and certain holidays identified in the California Government Code. (Civ. Code, § 7.)

The Arizona holiday statute (Ariz. Rev. Stat. § 1-303) is similar in terms to Civil Code section 11, but applies to Arizona-defined holidays.

In the third amended complaint, plaintiffs allege that BofA-USA has issued credit cards to California consumers pursuant to various cardholder agreements. Upon information and belief, plaintiffs allege that the current version of this agreement states that Arizona law governs. Plaintiffs also allege that the "practices complained of herein are illegal whether this choice of law clause is given effect or not." We will limit our analysis in this case to the interpretation and application of the two California holiday statutes—Civil Code sections 9 and 11.

■ There is a general presumption against federal preemption of a state's traditional police powers, unless the state regulates in an area where there has been a "significant federal presence." (*United States v. Locke* (2000) 529 U.S. 89, 108 [146 L.Ed.2d 69, 120 S.Ct. 1135]; see *Hood, supra*, 143 Cal.App.4th at pp. 536–537; *Smith, supra*, 135 Cal.App.4th at p. 1475.) The area of banking regulation has posed some issues in this regard. This is because the states' traditional police powers include the regulation of banking (*Smith, supra*, 135 Cal.App.4th at p. 1475; *Hood, supra*, 143 Cal.App.4th at p. 537); banking has been found to be an area traditionally subject to dual federal and state control (*National State Bank, Elizabeth, N. J. v. Long* (3d Cir. 1980) 630 F.2d 981, 985); and banking has been deemed an area where there has been a significant federal presence (*Bank of America v. City & County of San Francisco* (9th Cir. 2002) 309 F.3d 551, 558–559 (*City & County*)).

A sorting out of these issues of preemption involving the area of banking regulation has occurred in three respects. The first is whether the bank at issue is a national bank. (*City & County, supra*, 309 F.3d at pp. 558–559 [state regulation is permissible "when it 'does not prevent or significantly interfere with [a] national bank's exercise of its powers' "]; see, e.g., *Barnett Bank of Marion City, N. A. v. Nelson* (1996) 517 U.S. 25, 27–28 [134 L.Ed.2d 237, 116 S.Ct. 1103] [federal statute authorizing national banks to sell insurance in small towns preempted a conflicting state law that prohibited such sales].)

The second is whether the claims at issue involve state laws that target banks or seek to regulate banking, or whether the state laws are of general application. (*Hood, supra*, 143 Cal.App.4th at p. 537; see *Watters v. Wachovia Bank, N. A.* (2007) 550 U.S. 1 [167 L.Ed.2d 389, 400, 127 S.Ct. 1559] (*Watters*) ["Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the" National Bank Act].)

And the third, drawing from these two, is the critical one, encapsulating the preemption principle we apply here: "Regardless of the nature of the state law claim alleged" (*Rose v. Chase Bank USA, N.A.* (9th Cir. 2008) 513 F.3d 1032, 1038 (*Rose*)), the "central inquiry" regarding federal preemption in the banking realm is whether " ' "the legal duty that is the predicate of the [state law claim] constitute[s] a requirement or prohibition of the sort that federal law" ' " preempts. (*Hood, supra*, 143 Cal.App.4th at p. 537; see *Smith, supra*, 135 Cal.App.4th at p. 1476; *Rose, supra* 513 F.3d at p. 1038; *Cipollone v.*

*Liggett Group, Inc.* (1992) 505 U.S. 504, 523–524 [120 L.Ed.2d 407, 112 S.Ct. 2608].)

### 2. *Federal Law and Preemption*

■ The "[b]usiness activities of national banks are controlled by the National Bank Act (NBA . . .), 12 U.S.C. § 1 et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC)." (*Watters, supra*, 550 U.S. at p. 6 [167 L.Ed.2d at p. 397], italics omitted.) "As the agency charged by Congress with supervision of the NBA, OCC oversees the operations of national banks and their interactions with customers." (*Ibid.*)

In 2004, the Office of Comptroller of the Currency (OCC) amended part 7 of its regulations to add provisions " 'clarifying the applicability of state law to national banks' operations. The provisions concerning preemption identify [the] types of state laws that are preempted, as well as the types of state laws that generally are not preempted, with respect to national banks' lending, deposit-taking, and other operations.' " (*Hood, supra,* 143 Cal.App.4th at p. 538; see 69 Fed.Reg. 1904 (Jan. 13, 2004); 12 C.F.R. pt. 7, subpt. D—Preemption, § 7.4000 et seq. (2009).)[3]

One of these provisions, section 7.4008, authorizing non-real-estate lending by national banks, is the applicable OCC regulation here. Section 7.4008(d) specifies the "[a]pplicability of state law" in this context and provides as pertinent:

"(d) *Applicability of state law.* (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

"(2) A national bank may make non-real estate loans without regard to state law limitations concerning: [¶] . . . [¶]

"(iv) The terms of credit, including *the schedule for repayment of principal and interest,* amortization of loans, balance, *payments due,* minimum payments . . . ." (Italics added.)

■ The holiday statutes of Civil Code sections 9 and 11 provide that when a legal or contractual act falls due on a statutorily defined holiday, the

---

[3] Hereafter, undesignated references to regulatory sections will be to 12 Code of Federal Regulations part 7 (2009).

act may be performed on the next business day without any adverse consequence. As the trial court correctly found, "[b]y changing when a payment is due in such circumstances, these State statutes affect the 'schedule for repayment of principal and interest' [and we add, affect the 'payments due'] set by a national bank. Such interference is directly contrary to 12 C.F.R. section 7.4008, subdivision (d) which provides that a national bank may set the schedule for repayment on non-real estate loans [and set the payments due] without regard to state law limitations."

As noted, the "central inquiry" regarding federal preemption here is whether " ' "the legal duty that is the predicate of the [state law claim] constitute[s] a requirement or prohibition of the sort that federal law" ' " preempts. (*Hood, supra*, 143 Cal.App.4th at p. 537; see *Smith, supra*, 135 Cal.App.4th at p. 1476; *Rose, supra*, 513 F.3d at p. 1038.) The legal duty underlying the state law claim of the holiday statutes specifies that if the due date for an act falls on a weekend or other statutorily defined holiday, the act is due on the next business day. This duty constitutes a requirement of the sort that federal law expressly preempts in the context here of national banks engaging in non-real-estate lending: state law limitations concerning the terms of credit, including the schedule of repayment or the payments due. (§ 7.4008(d)(2)(iv).)

Plaintiffs themselves lend support to this view of the "central inquiry," albeit in the context of making other arguments. In their briefs on appeal, plaintiffs state that "the duty to be performed that is the subject of this lawsuit is a contractual duty to make payment at a specified time." And in their points and authorities in opposition to BofA-USA's demurrer, plaintiffs noted that "the holiday statute affects the *due date* for compliance. Under the holiday statute, a bill that contains a due date falling on a weekend or holiday is instead due on the next business day." (Original italics.)

Plaintiffs attempt to get around these statements by arguing in their opening brief that BofA-USA "is entirely free to set both the schedule for repayment and the payment due. The holiday statute does not at all change either of these components of the loan arrangement. Instead, it directs when payment made on a weekend or holiday is *credited* to the account." (Original italics.) We are not persuaded. The holiday statutes, as noted, focus on payment due dates, rather than payment credit dates, and so does section 7.4008(d)(2)(iv)'s preemptive language "schedule for repayment" and "payments due."

Nor does plaintiffs' argument that the holiday statutes apply generally, rather than just to banks, help them. First, Civil Code section 9 actually is directed at *bank* holidays. (See also Civ. Code, § 7.1.) And although Civil

Code section 11 is a statute of general application, its language and effect runs, as the trial court found, "directly contrary" to the preemptive language of section 7.4008(d)(2)(iv), as a "state law limitation[] concerning" the "terms of credit" involving the "schedule for repayment" and the "payments due."

■ We conclude that Civil Code sections 9 and 11 fall within the preemption language of section 7.4008(d)(2)(iv).

### 3. *Preemption Exemption*

Plaintiffs alternatively contend that the holiday statutes of Civil Code sections 9 and 11 fall within the preemption exemption set forth in section 7.4008(e)(1) for state contract law. We disagree.

Section 7.4008(e) specifies:

"(e) *State laws that are not preempted.* State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:

"(1) Contracts;

"(2) Torts;

"(3) Criminal law;

"(4) Rights to collect debts;

"(5) Acquisition and transfer of property;

"(6) Taxation;

"(7) Zoning; and

"(8) Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section [paragraph (a) authorizes national banks to make, sell, purchase, participate in, or otherwise deal in non-real-estate loans and interests in such loans]."

Plaintiffs argue that since the holiday statutes (1) comprise state laws on the subject of contracts and (2) have only an incidental effect on non-real-estate lending by national banks, these statutes fall within the contract

preemption exemption. We do not agree. As we shall explain, we find it unnecessary to define here the contours of this exemption because the state holiday statutes cannot fit within any reasonable definition of that exemption under the present facts.

As for plaintiffs' first point about the holiday statutes comprising state laws on the subject of contracts, plaintiffs note that Civil Code sections 9 and 11 apply to due dates set by "law or *contract*"; therefore, these statutes "relate directly to a party's performance of his obligations under a contract." Plaintiffs continue: "The duty to be performed that is the subject of this lawsuit is a *contractual duty* to make payment at a specified time. Beyond question, [then], the state laws at issue are on 'the subject' of contracts," and thus within this preemption exemption. (Original italics.)

However, as BofA-USA persuasively counters, any non-real-estate loan by a national bank, including a credit card loan, is *necessarily* contractual in nature. Consequently, under the plaintiffs' broad reading of the section 7.4008(e)(1) preemption exemption, *any* challenge to *any* aspect of BofA-USA's non-real-estate lending practices—including challenges to the expressly identified preempted areas of terms of credit involving schedules for repayment and payments due—would be on the "subject" of contracts. Under this expansive reading, the regulation dictating preemption would be absurdly negated by its own exemption. This cannot be.

Additionally, the plaintiffs' misreading of the term "contract" in the holiday statutes is further exemplified by applying that method of reading to the parallel term to "contract" that appears in these statutes: "law" ("act appointed by law or contract"—Civ. Code, § 9; see Civ. Code, § 11). Since, under that method of reading, the holiday statutes would relate directly to a party's performance of his or her obligations under the *law*, any obligations under the *law*, or at least under the subjects of the law listed in section 7.4008(e), would be exempted from preemption. Again, this cannot be.

That brings us to the plaintiffs' second point: that the holiday statutes of Civil Code sections 9 and 11 only incidentally affect the non-real-estate lending operations of national banks. As to this point, which plaintiffs developed during oral argument, plaintiffs assert that incidental effect is determined by whether the state law at issue applies generally to all commercial interests (in which case its effect is deemed incidental), or whether the state law applies specifically to banks (in which case its effect is not deemed incidental). Since the holiday statutes apply generally, plaintiffs argue, the statutes are of incidental effect only.

Plaintiffs, however, have omitted a crucial element from this general/specific dichotomy. The rule is that state laws of general application

*"that affect lending only incidentally"* are not preempted by a preemption exemption like section 7.4008(e)(1). (See *Gibson v. World Savings & Loan Assn.* (2002) 103 Cal.App.4th 1291, 1307 [128 Cal.Rptr.2d 19]; *id.* at pp. 1306, 1298, fn. 1, italics added (*Gibson*); *Fenning v. Glenfed, Inc.* (1995) 40 Cal.App.4th 1285, 1298–1299 [47 Cal.Rptr.2d 715] (*Fenning*); see also *Smith, supra*, 135 Cal.App.4th at p. 1484.) In the *Gibson-Fenning-Smith* line of cases, for example, the state laws of general application concerned the duty to refrain from making misrepresentations. (*Ibid.*) ■ These state laws of general applicability were not federally preempted because, as *Fenning* observed, while state law "cannot dictate to the [national] Bank how it can or cannot operate, . . . it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive business practices." (*Fenning, supra*, 40 Cal.App.4th at p. 1299; accord, *Gibson, supra*, 103 Cal.App.4th at p. 1305.)

While the generally applicable state misrepresentation laws in *Gibson-Fenning-Smith* were not preempted because they only incidentally affected lending, the same cannot be said for the holiday statutes of Civil Code sections 9 and 11. These holiday statutes, although they are laws of general application, directly counter a specific federal law on a subject central to lending operations: terms of credit involving the schedule for repayment of principal and interest and the payments due. Consequently, these holiday statutes, as a matter of law, affect lending more than incidentally and are therefore not within the preemption exemption of section 7.4008(e)(1).

For all these same reasons, moreover, plaintiffs' overly broad reading of the section 7.4008(e)(1) contract preemption exemption to encompass the holiday statutes would inherently make those statutes neither consistent with nor incidental to the non-real-estate lending operations of national banks. In short, plaintiffs' preemption argument—through its unbounded scope—sows the seeds of its own destruction.[4]

■ We conclude that the holiday statutes of Civil Code sections 9 and 11 do not fall within the preemption exemption for state "contract" laws set forth in section 7.4008(e)(1).[5]

---

[4] For similar reasons, plaintiffs cannot maintain that they should have been given leave to amend to establish that the holiday laws only incidentally affect national banks' exercise of non-real-estate lending powers.

[5] Because we have found that Civil Code sections 9 and 11 are preempted under section 7.4008(d)(2)(iv), we need not consider the other grounds of preemption tendered by BofA-USA.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Cantil-Sakauye, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 29, 2009, S171152. Chin, J., did not participate therein.